## LAMBORN *v.* COUNTY COMMISSIONERS.

A contract for the purchase by A. from B. of certain lands in Kansas provided that A. should pay all taxes lawfully assessed on them, and that B. would convey them upon the payment of the purchase-money. The taxes assessed for the year 1870, held by the Supreme Court of the State to be valid, not having been paid, the county treasurer advertised, and, in May, 1871, sold the lands therefor, the county bidding them in. In 1872, C., trustee and repre-. sentative of A., relying upon the validity of the tax, paid without protest into the county treasury, out of moneys belonging to A., a sum sufficient to redeem the lands so sold, and received the tax certificate therefor, which he took in his own name. He also paid a portion of the taxes for 1871 and 1872. The statute provides that, on the non-redemption of lands within three years from the day of the sale thereof for taxes, the treasurer may, on the presentation of the certificate, execute a deed to the purchaser, or refund the amount paid therefor, if he discovers that, by reason of error or irregularity, the lands ought not to be conveyed. This court having decided that the lands were not taxable, C., in 1874, offered to return the tax certificate to the county treasurer, and demanded that the moneys paid by him be refunded. That demand having been refused, he brought this action to recover them. *Held*, 1. That C. cannot be regarded as a purchaser of the lands. 2. That the payments by him so made, there having been neither fraud, mistake of fact, nor duress, were voluntary, in such a sense as to defeat the action. 3. That the statute of Kansas, as construed by the Supreme Court of that State, does not, upon the facts of the case, entitle him to recover.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*Mr. C. E. Bretherton* for the plaintiff in error.

*Mr. S. O. Thacher, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

Lamborn, the plaintiff in error in this case, is the trustee and representative of the National Land Company. This company had contracted with the Kansas Pacific Railway Company for the purchase of a large quantity of the lands in Kansas, to which the latter company was entitled under the congressional grant made to it, under the name of the Leavenworth, Pawnee, and Western Railroad Company, and the Union Pacific Railroad Company, Eastern Division, by the acts of July 1, 1862, and July 2, 1864. The contract required the land company to

pay all such taxes and assessments as might be lawfully imposed on the lands. And it provided that the railway company should, at the request of the land company, convey by deed of general warranty any of the lands purchased, whenever the purchase-money and interest and the necessary stamps should be furnished by the latter. The land company, after acquiring this contract, had contracted to sell large portions of the lands to third parties, taking from them agreements to pay all taxes and assessments that might be imposed upon the lands sold to them respectively. The lands in Dickinson County were assessed by the defendants for taxes for the years 1870, 1871, and 1872 successively, when, as yet, they were not taxable, no patent having been issued therefor, and the costs of surveying, selecting, and conveying the same not having been paid. These taxes, therefore, as decided by us in the case of *Railway Company* v. *Prescott* (16 Wall. 603), were not legal. Nevertheless, the Supreme Court of Kansas, in that case, had held such taxes legal; and the taxes for the year 1870, now in question, not having been paid, the treasurer of Dickinson County proceeded to advertise and sell the lands therefor in May, 1871, and, no person bidding the requisite amount, the lands were bid in for the county. The assessments for 1871 and 1872 were made against the lands whilst they were in this position.

By the laws of Kansas, if lands sold for taxes are bid in for the county, the county treasurer is authorized to issue a tax certificate to any person who shall pay into the county treasury an amount equal to the cost of redemption at the time of payment. Gen. Stat. of Kansas, c. 107, sect. 91. And if any lands sold for taxes are not redeemed within three years from the day of sale, the clerk of the county may execute a deed to the purchaser, his heirs or assigns, on the presentation to him of the certificate of sale. Sect. 112. It is further provided, that if the county treasurer shall discover, before the sale of any lands for taxes, that on account of any irregular assessment, or from any other error, such lands ought not to be sold, he shall not offer such lands for sale; and if, after any certificate shall have been granted upon such sale, the county clerk shall discover that, for any error or irregularity, such land ought not to be con-

veyed, he shall not convey the same; and the county treasurer shall, on the return of the tax certificate, refund the amount paid therefor on such sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, out of the county treasury, with interest on the whole amount at the rate of ten per cent per annum.   Sect. 120.

In 1872, the plaintiff in error paid into the county treasury the sums due for taxes, interest, &c., on the said lands in Dickinson County, which had been sold for taxes as aforesaid, and received tax certificates therefor, without making any protest, not being aware at that time, as he alleges, that the lands were exempt from taxation, but supposing that the taxes were legal and valid.   On the second day of January, 1874, after the decision of this court in *Railway Company* v. *Prescott (supra)*, he offered to return the tax certificates to the county treasurer, and demanded a return of the money paid by him into the county treasury, with interest, which was refused by the treasurer; and thereupon this suit, against the board of county commissioners of that county, was brought to recover the same.

Under this state of facts the judges of the Circuit Court differed in opinion on the following points of law: —

1. Whether judgment should be rendered for the plaintiff or for the defendant.

2. Whether the acquisition of said tax certificates and the subsequent payment of taxes by the plaintiff was a voluntary payment of the money now sought to be recovered back in such a sense as to defeat the right to such recovery.

3. Whether the statute of Kansas (Gen. Stat., p. 1058, sects. 120, 121) gives the right upon the facts above found to the plaintiff to recover in respect of the causes of action set out in the petition.

Judgment was given in favor of the defendant, in accordance with the opinion of the presiding judge, and Lamborn sued out this writ of error.

The plaintiff insists that he is to be regarded as a purchaser, and entitled under the statute referred to, or, if not under that statute, then on general principles of law, to a return of the money paid by him to the county treasurer.

But we are of opinion that the plaintiff cannot be regarded as a purchaser of the lands. The moneys were paid by him on behalf of the National Land Company, under the belief that the taxes were legal and valid; and it is not only apparent from the facts found that he made the payment in 1872 by way of redeeming the lands, but, if it did not so expressly appear, it ought to be presumed that he paid the money for that purpose. As between the land company and the Kansas Pacific Railway Company (which had not yet been paid for the lands), it was the duty of the former to pay all legal taxes and assessments imposed thereon. The plaintiff, as agent of the land company, could not acquire a tax title without being guilty of bad faith to the railway company. Taxes on lands in Kansas are assessed against the lands themselves, and a tax sale (when valid) confers an absolute title. Such a sale, had it been valid in this case, would have given the land company a full and valid title adverse to that of the railway company, and would have defeated their lien upon the same for the purchase-money. The cases on this subject are very full and explicit, and are based on considerations of equity and justice. Judge Cooley says: "There is a general principle applicable to such cases, that a purchase made by one whose duty it was to pay the taxes shall operate as payment only: he shall acquire no rights, as against a third party, by a neglect of the duty which he owed to such party. This principle is universal, and is so entirely reasonable as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance." And he instances the cases of lessees and mortgagors as obviously within the disability. Cooley, Taxation, 346. In Blackwell on Tax Titles, 401, it is said: "A vendee cannot acquire a title adverse to his vendor by the purchase of the land at a tax sale, nor can an agent whose duty it is to pay the taxes become the purchaser of the principal's land at such a sale." This doctrine has been fully adopted by the Supreme Court of Kansas. *Carithers* v. *Weaver*, 7 Kan. 110; *Kurtz* v. *Fisher*, 8 id. 90.

The next question to consider, therefore, is whether money thus paid by way of redemption can be recovered back. There

are only three grounds on which such a recovery can be maintained, — fraud, mistake, or duress.

No fraud is charged.

Mistake, in order to be a ground of recovery, must be a mistake of fact, and not of law. Such, at least, is the general rule. 3 Pars. Contr. 398; *Hunt* v. *Rousmaniere,* 1 Pet. 1; *Bilbie* v. *Lumley,* 2 East, 183; 2 Smith, Lead. Cas. 398 (6th ed. 458), notes to *Marriot* v. *Hampton.* A voluntary payment, made with a full knowledge of all the facts and circumstances of the case, though made under a mistaken view of the law, cannot be revoked, and the money so paid cannot be recovered back. *Clarke* v. *Dutcher,* 9 Cow. (N. Y.) 674; *Ege* v. *Koontz,* 8 Pa. St. 109; *Boston & Sandwich Glass Co.* v. *City of Boston,* 4 Metc. (Mass.) 181; *Benson & Another* v. *Monroe,* 7 Cush. (Mass.) 125; *Milnes* v. *Duncan,* 6 Barn. & Cress. 671; *Stewart* v. *Stewart,* 6 Cl. & Fin. 911; and see cases cited in note to 2 Smith, Lead. Cas. 403, 404 (6th ed. 466), *Marriot* v. *Hampton.*

In the present case, there is no dispute that all the facts and circumstances of the case, bearing on the question of the legality of the tax, were fully known to the plaintiff. He professedly relied on the law, as declared by the Supreme Court of Kansas, and supposed that the tax was legal and valid.

The only other ground left, therefore, on which a right to recover back the money paid can be at all based, is, that the payment was not voluntary, but by compulsion, or duress. It is contended that the plaintiff was obliged to pay the taxes in order to remove the cloud from the title which had been raised by the tax sale, and to prevent a deed from being given to some third party after the expiration of the three years allowed for redemption.

It is settled by many authorities that money paid by a person to prevent an illegal seizure of his person or property by an officer claiming authority to seize the same, or to liberate his person or property from illegal detention by such officer, may be recovered back in an action for money had and received, on the ground that the payment was compulsory, or by duress or extortion. Under this rule, illegal taxes or other public exac-

tions, paid to prevent such seizure or remove such detention, may be recovered back, unless prohibited by some statutory regulation to the contrary. *Elliott* v. *Swartwurt*, 10 Pet. 137; *Ripley* v. *Gelston*, 9 Johns. (N. Y.) 201; *Clinton* v. *Strong*, id. 369; and cases cited in 2 Smith, Lead. Cas. (6th ed.) 468; Cooley, Taxation, 568.

But it has been questioned whether a sale or threatened sale of land for an illegal tax is within this rule, there being no seizure of the property, and nothing supervening upon the sale except a cloud on the title. This view has been adopted in Kansas. In *Phillips* v. *Jefferson County* (5 Kan. 412), certain Indian lands, not legally taxable, were nevertheless assessed and sold for taxes, and a certificate issued to the purchaser. Phillips, having acquired title to the land, paid the amount of said taxes, at the same time denying their legality, and saying that he paid the money to prevent tax-deeds from issuing on the certificates. The court hold that the payment was purely voluntary, and add: " The money was not paid on compulsion or extorted as a condition. A tax-deed had been due for nearly two years. Had the plaintiff desired to litigate the question, he could have done so without paying the money; even had a deed been made out on the tax certificate, it would have been set aside by appropriate proceedings. There was no legal ground for apprehending any danger on the part of the plaintiff. He could have litigated the case as well before as after payment. Neither his person nor property was menaced by legal process. Regarding, then, the payment as purely voluntary, it is as certain as any principle of law can be that it could not be recovered back."

It seems to us that this case is precisely parallel with the one before us. We are unable to perceive any distinction between them. And as it is the law of Kansas which we are called upon to administer, the settled decisions of its Supreme Court, upon the very matter, are entitled to the highest respect. We are not aware of any decision which tends to shake the authority of *Phillips* v. *Jefferson County*. On the contrary, the same views have been subsequently reiterated. In *Wabaunsee County* v. *Walker* (8 id. 431), a case precisely like it, with the exception that when the taxes were paid to the county collector

to redeem the tax certificates, under a mistaken view of the law, he charged twice as much interest as he was entitled to, the party paid under protest. Yet it was held that he could not recover back even the illegal interest. The court relied on the previous decision in *Phillips* v. *Jefferson County*, and, after examining various other authorities, summed up the matter as follows: "A correct statement of the rule governing such cases as this would probably be as follows: Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed to be voluntary, and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest does not make the payment involuntary."

The question was again discussed in the recent case of the *Kansas Pacific Railway Co.* v. *Commissioners of Wyandotte County* (16 id. 587); and although, in that case, a personal tax paid by the railroad company under protest was recovered back, such recovery was allowed on the ground that, if the tax was not paid, it would be the immediate duty of the county treasurer to issue a warrant to the sheriff to levy upon and sell the personal property of the company therefor. But the principles of the former cases were recognized and affirmed.

It has undoubtedly been held in other States (though perhaps not directly adjudged) that a payment of illegal taxes on lands, to avoid or remove a cloud upon the title arising from a tax sale, is a compulsory payment. The case of *Stephan* v. *Daniels et al.* (27 Ohio St. 527) is of this character; though in that case the plaintiff relied on the provisions of a local statute; and besides this, a legal tax was combined with an illegal assessment, and perhaps a sale would have conferred a valid title upon the purchaser. Where such would be the effect of a tax sale, we cannot doubt that a payment of the tax, made to prevent it, should be regarded as compulsory and not voluntary. The threatened divestiture of a man's title to land is certainly as stringent a duress as the threatened seizure of his goods; and if imminent, and he has no other adequate remedy to pre-

vent it, justice requires that he should be permitted to pay the tax, and test its legality by an action to recover back the money. But as, in general, an illegal tax cannot furnish the basis of a legal sale, the case supposed cannot often arise. If the legality of the tax is merely doubtful, and the validity of the sale would depend on its legality, according to the law of Kansas, the party, if he chooses to waive the other remedies given him by law to test the validity of the tax, must take his risk either voluntarily to pay the tax, and thus avoid the question, or to let his land be sold, at the hazard of losing it if the tax should be sustained. Having a knowledge of all the facts, it is held that he must be presumed to know the law; and, in the absence of any fraud or better knowledge on the part of the officer receiving payment, he cannot recover back money paid under such mistake.

In conclusion, our judgment is that the questions submitted by the Circuit Court must be answered as follows : —

To the first: that judgment should be rendered for the defendant.

To the second: that the acquisition of the tax certificates and the subsequent payment of the taxes by the plaintiff were a voluntary payment, in such a sense as to defeat the right to recover in this action.

To the third: that the statute of Kansas, referred to in the question, does not, upon the facts found, give to the plaintiff the right to recover in respect of the causes of action set out in the opinion.

*Judgment affirmed.*