FINNELL et al. v. ARMOURA.

No. 2210.   Decided June 16, 1911 (117 Pac. 49).

1.  BANKRUPTCY—DISCHARGE IN BANKRUPTCY—CLAIMS DISCHARGED.
    A creditor, whose claim was scheduled in a petition in bank-
    ruptcy under debtor's right name, and provable, had a suit
    pending in justice's court against the debtor, under a wrong
    name, by reason of the action of the justice.   There was nothing
    to show that the creditor had dealt with the debtor under the
    wrong name.   *Held*, that the claim of the creditor was properly
    scheduled, and a discharge in bankruptcy released the debtor,
    under Bankr. Act, July 1, 1898, c. 541, section 17, 30 Stat. 550
    (U. S. Comp. St. 1901, p. 3428), from liability thereon.   (Page
    320.)

2.  PAYMENT—VOLUNTARY PAYMENT.   Where a judgment debtor,
    who had obtained a discharge in bankruptcy releasing him from
    liability on the judgment, delivered to an officer threatening to
    levy on the entire business of the debtor to satisfy the judg-
    ment a check, on the undersigned that it should be deposited
    with the clerk of the court to be returned to the debtor on his
    establishing his claim that the liability was discharged, the
    delivery of the check was not a voluntary payment, and the
    debtor could recover the check.   (Page 323.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Proceedings by Frank Armoura, alias Frank Arima, to quash an execution issued against him on a judgment re-covered against him by C. V. Finnell and another, as Finnell & Hutchins.

Judgment quashing the execution.   Judgment creditors appeal.

AFFIRMED.

*E. A. Walton* for appellants.

*H. A. Smith* for respondent.

FRICK, C. J.

This was a summary proceeding instituted in the foregoing action, and based upon a motion to quash an execution which, it is alleged, was issued or based upon a judgment which, for the reasons hereinafter stated, was and is unenforceable against the respondent.

The undisputed facts, briefly stated, are:    That on the 5th day of February, 1907, respondent, under his name of Frank Arima, filed his petition in the United States District Court in which, after setting forth the necessary facts, he prayed to be adjudged a bankrupt and discharged as such. In connection with said petition, he duly filed the schedules, oaths, and summary required by the bankruptcy act. In such schedules he set forth the fact that, among others, he was indebted to appellants upon an open account, which he scheduled in the following words:    "One due C. V. Finnell and L. J. Hutchings, doing business as Finnell & Hutchings, a partnership, of Bingham, Utah, contracted during years 1904 and 1905, being an open account for meat and merchandise sold and delivered to bankrupt, of the full value of $128.30, action having been commenced on this account in the justice's court of Murray City, Utah;" that on the 9th day of February, 1907, the United States District Court duly entered an order adjudging respondent a bankrupt; that the action referred to in the statement just quoted from was pending in said justice's court when respondent was adjudged a bankrupt; that thereafter, on the 3d day of June, 1907, and after all of the provisions of the bankruptcy act had been fully complied with, said United States District Court duly entered an order discharging respondent from all debts provable under the bankruptcy act, and excepted from said discharge only such as are excepted in said act; that the respondent was not indebted to appellants otherwise than on said open account and in the amount aforesaid; that, notwithstanding said bankruptcy proceedings, and after respondent had been adjudicated a bankrupt as aforesaid, appellants nevertheless proceeded with the action pending in the justice's court aforesaid, and on the 19th day of March, 1907, a

judgment was entered in said action against the respondent; that respondent in said action was sued by the name of Frank Armoura and judgment was entered against him by said name, although his true name is Frank Arima; that a transcript of said judgment was thereafter duly filed in the office of the district court clerk in Salt Lake County, and that, prior to the 4th day of July, 1910, an execution was duly issued by said clerk on said judgment; that on and prior to the 4th day of July, 1910, the respondent owned and was conducting a small business at Wandemere, Salt Lake County, from which he derived some profit; that on the 4th day of July aforesaid, which was one of the best business days in the year for said business, respondent during said day had received from said business the sum of $120; that on said day, while the respondent was conducting his said business, and while his receipts were increasing, one C. L. Schettler, a deputy sheriff of Salt Lake County, who had the execution aforesaid in his hands for service, demanded payment of the judgment so obtained in said justice's court of Murray City as aforesaid, which, with interest and costs, amounted to the sum of $212.05, from the respondent; that said deputy sheriff, at the time he made demand for payment as aforesaid, informed respondent that he, said deputy, had said execution in his possession, and that, unless payment of said judgment were made immediately by respondent, he (the said deputy) would close up and take possession of respondent's business; that respondent then informed said deputy sheriff that he (the respondent) had obtained the benefit of the bankruptcy act, and that he "had been discharged in bankruptcy from said indebtedness;" that it was then agreed between said deputy sheriff and respondent, in order to prevent said deputy from taking possession of said business, respondent would give, and he did give, said deputy a check for the amount of said judgment, with the understanding, however, that said check was to be deposited with the clerk of the district court of Salt Lake County, and in case respondent established his claim that he was not indebted on said judgment because of his discharge as a bankrupt, as aforesaid, he was to have his check returned to him.

The deputy sheriff took the check with that understanding, deposited the same in the clerk's office, and the respondent commenced this proceeding to quash the execution attempted to be enforced as aforesaid. The deputy sheriff, in referring to respondent's claim that the execution was unjustly issued, and that he had been discharged as a bankrupt, said: "I told him I didn't know anything about that; I either had to get the money or levy on his place; so he gave me a check. . . . I told him I would turn it into court. He said 'I will establish my claim (the discharge in bankruptcy).' I said, 'You can do that.'" Respondent in this connection testified: "He (the deputy sheriff) told me if I don't pay it he is going to levy on my place, attach my things. That time I was doing good business. Fourth of July I got the best day in the season. . . I was busy; was afraid he was going to attach if I didn't pay; levy on my place." It also was made to appear that appellants, under the name of Finnell & Hutchings, were doing business at Bingham, Salt Lake County, when respondent filed his petition in bankruptcy. Upon cross-examination, appellants' counsel sought to show that respondent was known by more than one name, and in this connection he was asked about his other name, Armoura, and how he spelled it. Respondent answered: "That is not my name, but the court put my name Frank Armoura; but my true name is Frank Arima." By this the witness meant that in the case pending in the justice's court of Murray City "the court" had given him, or that he was sued by, the name of Frank Armoura, instead of Frank Arima.

Appellants offered no evidence, and nothing is made to appear from which it can be inferred that respondent's name was not Arima, or that he was ever known by any other name, or that appellants knew and dealt with him as Armoura, the name by which he was sued. It also appears that the check was cashed, and that the proceeds thereof were deposited, instead of the check, with the clerk of the district court. Upon substantially the foregoing facts, the court made conclusions of law and directed judgment that the execution be quashed, and

that the money on deposit with the clerk, as aforesaid, be returned to respondent.

But two questions are presented for review: (1) Did the order entered by the United States District Court, discharging respondent as a bankrupt debtor, include the claim in question; and (2) if it did so, was the payment made by respondent voluntary, so that he may not recover it back?

With regard to the first proposition, section 17 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), so far as material here, provides:

"A discharge in bankruptcy shall release a bankrupt from all provable debts except such as . . . (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

If, therefore, the claim in question was duly scheduled as provided by that portion of section seventeen just quoted, or if not so scheduled the creditor nevertheless had notice or actual knowledge of the pendency of the bankruptcy proceedings, so that he might have proved his claim, then the discharge is complete. This precise question was before the Supreme Court of Kansas, in the case of *Zimmerman v. Ketchum,* 66 Kan. 98, 71 Pac. 264, 11 Am. Bankr. Rep. 190, where it was held that if the claim was properly scheduled then the bankrupt was entitled to be discharged, where, as in this case, it appeared that the claim was one which was provable under the bankruptcy act. In the case of *Claster v. Soble,* 22 Pa. Super. Ct. 631, 10 Am. Bankr. Rep. 446, it was held that in case a claim is reduced to judgment, as was done in the case at bar, after the bankruptcy proceedings had been commenced, and although the claim was not scheduled, yet, if the creditor has actual knowledge of the pendency of the bankruptcy proceedings in time to file and prove his claim, the bankrupt is nevertheless discharged from all liability on such judgment. The court, in referring to the provisions of section seventeen of the bankruptcy act, a portion of which we have quoted, says: "It is very clear from this provision the plaintiffs having admitted that they had knowledge of the proceedings in

bankruptcy, that the defendant was discharged from all personal liability on the note upon which the judgment was entered. It follows, of course, that the judgment had no validity, and that all proceedings thereunder were absolutely void." While there was no evidence in this proceeding that the appellants had actual knowledge of the pendency of the bankruptcy proceedings, yet the evidence, to our minds, is conclusive that the claim which was merged into a judgment on which the execution in question was based was properly scheduled by respondent in time to permit the appellants to prove up their claim, and that the claim in question was one that was provable within the provisions of the bankruptcy act.

Appellants do not dispute the fact that the claim was properly scheduled, but they base their objection entirely upon the ground that respondent was known by two names, namely, Arima and Armoura. As we have already shown, respondent was sued by the name of Frank Armoura, and the judgment was entered against him by that name. The bankruptcy proceedings were, however, commenced and conducted in the name of Frank Arima, which was respondent's correct name. It is contended, therefore, that appellants were not required to pay any attention to bankruptcy proceedings wherein Arima was adjudged a bankrupt, because their claim was not against Arima, but against Armoura, and that Armoura and Arima are not *idem sonans*. The difficulty with this contention is that there is not a word of testimony that Arima ever was known by the name of Armoura, or that if he was that appellants ever dealt with him under the latter name. For aught that appears, appellants dealt with respondent under his name and the misnomer occurred, as the respondent says it did, in the justice's court of Murray. The question of *idem sonans* is therefore not involved, nor is the question of whether the claim was properly scheduled involved. In scheduling the claim, respondent did all that the bankruptcy act required him to do, and having done so he is entitled to be released

from the claim in question. In all of the cases cited by appellants' counsel, the mistake in scheduling was made in either the names or the addresses of the creditors. The mistakes in those cases were made by the bankrupts, and where such is the case the bankrupt, and not the creditor whose name is incorrectly given, must bear the consequences. In the case at bar, however, the bankrupt gave the name and address of appellants correctly and scheduled the claim in conformity with the requirements of the bankruptcy act. If some one, therefore, applied to respondent a name other than his own, why should he be made to suffer? He asked to be adjudicated a bankrupt under his own name, and, as we have seen, so far as the evidence discloses, he neither claimed any other nor had transacted business under any other name. The only ground, therefore, upon which the contention that the claim was not properly scheduled can be based is the one that the appellants had an action pending at the time the bankruptcy proceedings were commenced, which action they commenced and controlled themselves, and in which respondent was called Frank Armoura, instead of Frank Arima, as he should have been called. Eliminate from this case the action pending in the justice's court, and there is not even a shadow upon which to base the contention that the claim was not properly scheduled. Can appellants make respondent responsible for their own or the justice's blunder in applying to respondent a wrong surname? We think not. Appellants have not referred to a single case which even moots such a doctrine. We are clearly of the opinion, therefore, that the claim in question was properly scheduled; that it was one which was provable under the bankruptcy act; and hence that respondent, by his discharge, was released from the legal obligation sought to be enforced against him under the execution in question.

In proceeding to a consideration of the second proposition, we remark that we are hardly prepared to admit that, in view of the undisputed facts, the question of voluntary payment is involved. It seems to us that the check was given and received upon the express condition that, if respondent should establish the fact that the claim in question had been dis-

charged in the bankruptcy proceedings, he should then receive back either the check or the money which the check represented. Every act of the deputy sheriff and the respondent taken after the receipt of the check indicates this conclusion. The check, therefore, was merely substituted in the place of respondent's property or business, which the deputy sheriff threatened to levy upon. We think no one will dispute that, if the deputy sheriff had levied on and had taken possession of the property or business of respondent, he might have moved to quash the execution, just as was done; and if it had been found that there was no valid judgment to support the execution it would have been quashed and respondent's property or business returned to him, just as was the case with the money realized from the check. After a levy had been made, the proper proceoure was to move to quash the execution. (*Gorecke v. Campbell,* 24 Neb. 306, 38 N. W. 847.) We think respondent was not prejudiced in the right to contest the validity of the execution by substituting the check for the business or property which the deputy sheriff threatened to take into possession.

But, assuming, as counsel for appellants has assumed, that under the facts it may be contended that the doctrine of voluntary payment is presented, yet the question remains whether the payment in question constituted a voluntary payment or not. It seems to us that all the facts and inferences point to a contrary conclusion. Respondent's objection was more than a mere temporary protest, which was ignored or disregarded by him in giving the check. As we have seen, the check was in fact given conditionally, and the deputy sheriff himself understood and complied with the condition. The check was not applied in payment of appellants' claim, but was deposited with the clerk of the district court and respondent immediately proceeded to establish his contention that he had been discharged as a bankrupt, just as was agreed to be done. Moreover, respondent was compelled to give the check, or permit the deputy sheriff to take possession of his property or business. If this was not surrendering property under compulsion, then we cannot see how any payment could be ex-

cuscd which is made to prevent a threatened levy under ar execution. This case is not one where there was a threat to levy on or take only a part of the debtor's property, but the threat was to levy on and take possession of the entire business—all the debtor had. If the judgment on which the execution was based was given upon a claim from which respondent had been released by the discharge in bankruptcy, then the attempted levy was wrongful, and respondent, in order to prevent it, was justified in giving the check. Where payment is made under such circumstances, we think the great weight of authority is to the effect that the payment is involuntary and may be recovered back.

In 2 Page on Contracts, section 802, the author, in discussing this subject, says:

"The weight of authority is that payments made to prevent a threatened wrongful seizure of personality are made under duress and may be recovered."

In *Cox v. Welcher*, 68 Mich. 263, 36 N. W. 69, 13 Am. St. Rep. 339, Mr. Justice Campbell, in speaking for the court, says:

"The attempt to compel payment, where there is no legal burden, is regarded as a legal injury; and payment made to avoid the seizure and sale of property to pay a wrongful claim can be recovered back as an extorted sum for which there was no consideration."

In *Taylor v. Hall*, 71 Tex. 213, 216, 9 S. W. 141, 142, the Supreme Court of Texas, in referring to the various conditions under which the law permits payments of money to be recovered back, says:

"The payment is generally held involuntary and recoverable by the payor, when made to an officer who has power immediately to enforce the collection."

In *Lamborn v. County Com'rs*, 97 U. S. 181, 185 (24 L. Ed. 926), Mr. Justice Bradley, speaking for the court, observes:

"It is settled by many authorities that money paid by a person to prevent an illegal seizure of his person or property by an officer claiming authority to seize the same, or to liberate his person or property from illegal detention by such officer, may be recovered back, in an action for money had and received, on the ground that the payment was compulsory, or by duress or extortion."

In 22 Am. & Eng. Ency L. (2d Ed.), p. 617, the law upon this subject is stated thus:

"Payments to prevent a threatened unlawful seizure of personal property are considered compulsory, within the meaning of the rule permitting the recovery back of compulsory payments, to the same extent as payments to secure the possession of property unlawfully withheld."

The attempted seizure in the case at bar was for a claim which had been duly scheduled by the respondent and from which he had been discharged. If, under such circumstances, a business man may continuously be harassed, then, as pointed out in the case of *Claster v. Soble, supra,* a discharge in bankruptcy falls far short of affording the protection that is intended by the bankruptcy act.

We are clearly of the opinion that the judgment quashing the execution and ordering the return of the proceeds of the check to respondent under the facts and circumstances is right, and it is therefore affirmed, with costs to respondent.

McCARTY and STRAUP, JJ., concur.