Opinion

per curiam:

This case was referred by the court, pursuant to Rule 45 (a), to Paul H. McMurray, a trial commissioner of the court, with directions to make findings of fact and recommendations for conclusion of law. The commissioner has done so in a report filed February 27, 1958, recommending the dismissal of plaintiff’s petition. On March 7, 1958, plaintiff filed a notice of intention to except to the report of the commissioner. Briefs were filed by plaintiff and defendant on April 11, 1958, and May 8, 1958, respectively, and on October 7, 1958, the case was submitted without argument to the court. Since the court agrees with the recommendation and findings of the commissioner, as hereinafter set forth, it hereby adopts the same as the basis of its judgment in this case. Plaintiff is therefore not entitled to recover, and its petition will be dismissed.
It is so ordered.
OPINION OP THE COMMISSIONER
The plaintiff, Appalachian Flooring Company, being the successful bidder, received a contract from the Army for laying 176,000 square feet of asphalt tile flooring in 44 barracks buildings at the New • Cumberland General Depot, United States Army, New Cumberland, Pennsylvania.
Performance under the contract was satisfactorily completed within the contract period, and plaintiff has been paid in full the original contract price, as adjusted by mutual agreement, plus an additional $2,600 based upon an increase allowed by an appropriate change order.
Plaintiff claims, in substance, that the work which it was required to do by defendant embraced certain tasks which were not specified in the invitation for bids, nor in the contract documents, and which it did not contemplate would be *13 required at the time it prepared and submitted its bid price, and that, because of the omission of specific reference to such tasks in the invitation for bids and the contract documents, they constituted additional work and consequently additional costs for which it now seeks compensation.
The work to be performed was described in the invitation for bids and in the contract itself, as follows:
Work to he performed: Laying a 14-inch underlayment and %-inch asphalt tile floor in 44 mobilization type barracks, including removing and replacing quarter round where required, contractor will furnish and pay for all material, equipment and labor and all permanent, temporary and incidental work, furnish all accessories and do everything that may be necessary to carry out the work specified within the intent and scope of these specifications and drawings.
Subsequent to the time of receiving the contract, plaintiff’s president and general manager (sometimes hereinafter referred to as “plaintiff”), visited the barracks and observed that 13 of the buildings were partitioned with a long corridor in the center giving off to a number of small administrative offices which were furnished with desks and typewriters, and were obviously in use at that time. He also observed that the other 31 buildings were occupied by troops and were furnished with footlockers and cots, and that each of the buildings had a recreation room with a pool table, a ping-pong table, and a barber’s chair.
Plaintiff complained to defendant’s resident engineer about the difficulties in working under the conditions which he had observed, and protested that the partitioning of the large spaces into small offices was not indicated on the contract drawings, and that the specifications contained no information that the buildings were furnished, nor that they would be occupied by personnel while the required work was under way. The resident engineer stated that all this information was available to plaintiff, if plaintiff had visited the site before submitting its bid. Plaintiff had not visited the site before submitting its bid, because it did not deem such a a visit necessary, for the reason that the plan of a barracks building (the contract drawing) showed only completely blank floor spaces, and the specifications were silent as to the *14 occupancy of the buildings and the necessity of moving furniture in performance of the work called for by the contract.
Thereafter, on May 10, 1955, while the work was in progress, plaintiff wrote to the contracting officer as follows:
This office has been notified by our field superintendent on the above captioned project, that work is being performed by beyond the requirements of plans and specifications such as: moving furniture and installing tile in areas with many partitions which is conflicting with drawing #700-1165.
We shall proceed with this work as you direct and a claim for additional moneys will be submitted by us at a later date.
The contracting officer’s response to this letter reads, in pertinent part, as follows:
* * * This contract calls for performance of “everything that may be necessary to carry out the work specified within the intent and scope of the specifications and drawings.”
The Post Engineer, this Depot, who has been designated to decide all questions which may arise as to the interpretation of the specifications and of drawings used and as to the fulfillment of this contract on the part of the contractor, has advised that the work being done on this contract is within the scope of the specifications and drawings.
Plaintiff subsequently filed a claim for $6,538 for work performed beyond the requirement of the contract. The contracting officer rejected plaintiff’s claim on the ground that all of the work performed was required by the contract and specifications, and the claim thereafter came before the Armed Services Board of Contract Appeals, in Washington, D. C., on November 9,1955.
At a hearing on appeal plaintiff was represented by counsel, and gave testimony by its president and general manager. Its claim was presented in three parts, one of which was for $2,600 additional costs for labor and materials involved because of the partitioning in 13 buildings which was not revealed on the contract drawings of the floor plans; the second and third parts, in the respective amounts of $1,034 and $2,904, were presented as additional costs involved in the moving of footlockers and cots, and in the restriction *15 of its operations to one-half of a floor at a time because of occupancy of the premises by the military personnel. The Armed Services Board of Contract Appeals sustained plaintiff as to the first part of the appeal, but denied the second and third items. Settlement of plaintiff’s claim for the $2,600 item was effected in accordance with the Board’s decision by payment of that sum to plaintiff in July 1956.
Plaintiff says that the partitioning in the 13 buildings, and the presence of furniture and personnel in the buildings, would have been equally obvious to an observer who visited the site before bidding and that because of this fact the Appeals Board was inconsistent in allowing the part of plaintiff’s claim which pertains to the partitioning, and denying the part which pertains to the presence of furniture and occupancy of the buildings. This approach to the problem is not deemed to be valid, and it is not accepted.
The basis of the Appeal Board’s favorable decision on plaintiff’s claim with respect to the partitioning, is obviously that the dividing of large spaces into a number of small offices by wall partitions constitutes a structural change which should properly have been shown on the structural drawings of the floor plans, and that defendant’s failure to show the structural alterations on the contract drawing gave sufficient merit to that part of plaintiff’s claim to warrant its acceptance by defendant. With respect to the presence of furniture, and the fact that the buildings were occupied by military personnel, the Appeals Board denied plaintiff’s claim, and upheld the decision of the contracting officer that these were matters which were not inherent in the structure of the buildings, and so did not constitute a changed condition. They were no more than a nuisance obstruction, the existence of which was quite apparent to any bidder who visited the site.
Unless the decision of the Armed Services Board was “fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence” the decision becomes “final and conclusive.” Act of May 11, 1954, 68 Stat. 81, 41 U. S. C. (1952 Ed., Supp. II) §321-322; Public Law 356, 83rd Cong., Chap. 199.
*16 It appears that the Board’s decision was based upon a hearing transcribed in a 75-page record, plus certain documents and papers. Plaintiff appeared by the same counsel as in the case here, who made an opening statement and a summation, in neither of which did he intimate that he was unable to present, or had been hindered from adequately presenting, plaintiff’s case. He made no complaint of non-production by the Government of documents or witnesses, nor of the Board’s procedures. Plaintiff’s counsel thanked the Board for its patient and careful consideration.
Plaintiff introduced only one witness, its president Charles J. Auditore, at the conclusion of whose testimony its counsel stated, “That is all for the direct case of Appellant.” Plaintiff placed in evidence only two documents, the drawing or floor plan and original schedule of work entitled “disposition form.” Since plaintiff’s appeal was from the decision of the contracting officer, the record before the Board not only included that decision but also 12 attached documents, letters and other papers, all of which are before the court as exhibits. Plaintiff introduced no rebuttal testimony.
Defendant introduced one witness, the military post construction engineer, Louis D. Shope, who testified that much of the furniture was moved by military personnel, testimony which plaintiff’s counsel confirmed on cross-examination. A review of the transcript discloses that most of the questions, answers and discussion concerned the basis for and costs of the claim for $2,600 in the 13 administrative barracks on account of the numerous partitions not shown on the floor plan. On the costs constituting the other two claims, plaintiff’s testimony was very brief, constituting only one typewritten page of the transcript.
With respect to the items claimed, $1,034 and $2,904 for (1) moving furniture about, and (2) occupancy during the flooring operations, plaintiff presented to the Board two oral “estimates” of $23.50 and $60 per building.
In its argument in summation of its claims before the Armed Services Board, plaintiff specifically stated that it did not accuse the Government of “misrepresentation” in the case. Although alleged in the general language of the statute in the petition, plaintiff offered no evidence at the trial *17 which established that the Board’s decision was tainted with any of the statutory evils, including those of being erroneous, capricious, arbitrary, or fraudulent. No facts were proved or pleaded to “show that the departmental decision was intolerable” as being within the “derogatory language of the statute.” Volentine & Littleton v. United States, 136 C. Cls. 638, 643.
Plaintiff says, in effect, that the presence of furniture which had to be temporarily moved as the work progressed, and the fact that the buildings would be occupied during the work period, should have had specific mention in the contract documents, and that, not being specifically mentioned in the contract documents, they constituted a changed condition. Neither of these things were, by their nature, unusual or formidable obstructions which could not reasonably have been anticipated or discovered by visual inspection of the site of the proposed work. The contracting officer correctly held that they were incidental to the performance of the floor-laying which was the substance of the contract, and were embodied in the contract in the work description by the phrase, “together with everything that may be necessary to carry out the work.” Clarification of this phrase, if it required clarification, was readily available to plaintiff’s president if he had visited the site or made inquiry before submitting his bid. He did not choose to do either.
Plaintiff has cited a number of cases[1] in support of the claim for an equitable adjustment for certain additional work performed, but not anticipated when the bid, which resulted in the award of a contract, was submitted. These cases have been examined and are not accepted as furnishing a proper basis for favorable action here. The cases cited do not involve facts or circumstances comparable to what existed in the instant claim. Plaintiff has cited the cases generally without any detailed analysis or comparison.
This is not a case wherein the defendant concealed or withheld from plaintiff certain facts or information not avail *18 able to plaintiff, except as to structural changes in 18 buildings. This error or oversight, apparently resulting from the use of an old drawing, was recognized and corrected by defendant through payment of additional compensation in the exact amount claimed by plaintiff for this item. There is no dispute as to certain office equipment or furniture being in the buildings where floor covering was to be laid; that such equipment was moved by plaintiff with some assistance by defendant, and that additional work was involved. The error in the drawing which failed to show that certain partitions had been installed, might be analagous to certain aspects of some of the cases cited by plaintiff, for example, Albert & Harrison v. United States, supra, where a drawing was misleading or not adequate. However, as pointed out above, that phase of the original claim has been settled in full.
Defendant insists that by accepting payment of $2,600 which was based upon plaintiff’s voucher as modified by defendant to show a final balance due of $2,600, plaintiff, in effect, agreed to the account stated and waived any additional claims. In this connection defendant has cited several court decisions[2] in its brief to support this view that the plaintiff is estopped from asserting that the other two items, omitted from the final payment as adjusted by defendant and accepted by plaintiff without exception, should now be paid.
Although it appears that some support for applying the doctrine of equitable estoppel to plaintiff’s claim is found in some of the cases cited by defendant, particularly, Harvey Radio Laboratories, Inc. v. United States, supra, in view of the denial of recovery on other grounds set forth in this opinion, a detailed discussion of this phase of the claim, which plaintiff insists resulted from confusion and a bookkeeper’s error, is deemed unnecessary.
Likewise, the attorney for defendant has cited some court decisions[3] in support of the theory that a valid “account *19 stated” between the parties resulted from defendant’s restatement of plaintiff’s statement of amount due under the contract, with payment of the amount due under the restatement, and receipt and acceptance by plaintiff, without protest, denial or modification of the balance paid. The sequence of events would seem to lend support to this theory advanced by defendant, but we need not decide the case on such basis in view of the manner in which it is proposed to dispose of the claim.
Plaintiff has not been specific but cites the entire record of the hearings before the Armed Services Board of Contract Appeals, as well as the evidence of record in this action, to support its allegation that the decisions of the contracting officer and of the Armed Services Board of Contract Appeals, were fraudulent, arbitrary, capricious, grossly erroneous, and not supported by substantial evidence. Such a conclusion is not warranted by the record presented.
In this case it is held that there was no misrepresentation by defendant of any fact which it was under a legal duty to disclose to plaintiff, nor of any fact known to defendant and unknown or unavailable to plaintiff. The proof does not establish fraud, gross error, arbitrary or capricious action in the findings of the administrative agency, nor that its decision was not supported by substantial evidence. Neither is there such a mistake shown as would warrant application of equitable principles to plaintiff’s claim under the equitable jurisdiction conferred upon this court.
FINDINGS OF FACT
1. Plaintiff Appalachian Flooring Company is, and at the times hereinafter mentioned was, a corporation duly organized under the laws of the State of Massachusetts. It is engaged in the business of laying and setting all types of wood and resilient flooring, and maintains its principal place of business at 33 Park Street, Somerville, Massachusetts.
2. Shortly after February 16,1955, plaintiff received from the Department of the Army an invitation to bid on the installation of flooring in 44 mobilization-type barracks at the New Cumberland General Depot, United States Army, New Cumberland, Pennsylvania.
*20 The invitation, for bids contained the following:
Description of work, including all material, equipment and labor and all permanent, temporary & incidental work, furnish all accessories for laying a inch under-layment and %-inch asphalt tile floor in 44 mobilization type barracks, including removing and replacing quarter round where required, in accordance with spec. & drawing forming a part hereof, together with everything that may be necessary to carry out the work specified m good faith within the intent and scope of these specifications.
3. Accompanying the invitation to bid was a blueprint drawing which had been prepared by the construction division of the office of the Quartermaster General on May 20, 1940, with revisions to December 12, 1940. This drawing contained a first-floor plan with a squad room for 23 men and two separate rooms for 4 non-commissioned officers, and a second-floor plan with a squad room for 30 men and two separate rooms for 6 non-commissioned officers, with the usual toilet, washroom, shower, and heating accommodations. Individual space allotment for each of the 63 men provided for was indicated by broken or dotted line drawing.
Plaintiff’s president, who was also the sole manager of the company’s business, saw the plan and understood what it indicated. He had seen such a plan many times and had done at least one hundred flooring jobs for the Government.
4. Accompanying the invitation to bid were instructions to bidders, paragraphs 1 and 2 of which read as follows:
’1. Explanation to Bidders. Any explanation desired by bidders regarding the meaning or interpretation of the drawings and-specifications must be requested in writing and with sufficient time allowed for a reply to reach them before the submission of their bids. Oral explanations or instructions given before the award of the contract will not be binding. Any interpretation made will be in the form of an addendum to the specifications or drawings and will be furnished to all bidders and its receipt by the bidder shall be acknowledged. _
_ 2. Conditions at Site of Worle. Bidders should visit the site to ascertain pertinent local conditions readily determined by inspection and inquiry, such as the location, accessibility and general character of the site, labor conditions, the character and extent of existing work *21 within or adjacent thereto, and any other work being performed thereon.
Although plaintiff’s president read the instruction concerning “conditions at site of work”, neither he nor anyone on plaintiff’s behalf visited the site or the barracks before submitting a bid. Plaintiff relied entirely on the floor plan. On some previous bids which plaintiff had submitted to the defendant for laying floors, plaintiff had qualified such bids for laying floors by stating thereon: “This price is based on the Government moving the equipment and the furniture.” Plaintiff’s president made no such qualification in this instance because his prior bidding experience with the defendant had taught him that such a qualified bid would not be accepted.
5. There was no reference in the invitation for bids or in the contract documents to the fact that the barracks buildings contained furniture, and would be occupied by personnel while the work was in progress. Neither did the blue-print drawing of the floor plans disclose that 13 of the barracks buildings were cut up by partitions into small administrative offices.
6. Plaintiff’s bid of $44,633.60 for performance of the work was accepted. This price was based on a measure of 176,000 square feet at $0.2536 per square foot. This price was subsequently reduced by plaintiff, on its own volition, to $0.2283 per square foot, and contract No. DA-36-230-A11-594, dated March 17, 1955 in the amount of $40,180.80 was awarded to plaintiff.
The contract described the work to be performed as the laying of a 14-inch underlayment and %-inch asphalt tile floor in 44 mobilization-type barracks, including removing and replacing quarter round where required, contractor to furnish and pay for all material, equipment and labor, and all permanent, temporary and incidental work, furnish all accessories and do everything that might be necessary to carry out the work specified within the intent and scope of the specifications and drawings. The specifications mentioned were a schedule of quantities and payment items. The only drawing mentioned was the floor plan issued May 20, 1940, known as No. 700-1165, which had accompanied the invita *22 tion to bid. Work was to be started within 10 days after receipt of notice to proceed, and to be completed within 150 days thereafter.
7. On April 12, 1955, in anticipation of the work to be performed, an Army adjutant posted the following notice throughout the area of the barracks buildings for the instruction of the military personnel occupying them:
1. A contract has been awarded to the Appalachian Flooring Company to install new asphalt tile floors in all two-story barracks in the 200 and 300 Area. Contractor will start the work on Monday, 18 Apr. 55, and expects to complete one building each day in accordance with the following schedule.
2. In order to expedite the work, and cause the least inconvenience possible to everyone concerned, it will require the cooperation of the occupants of these buildings. The buildings should be cleared of all furniture and other items where possible. All personal belongings and small items which must be left in the barracks will be placed in foot lockers or boxes. Furniture which must be left in the buildings will be moved by the contractor.
3. In the event the proposed schedule interferes with any activity, contact Mr. Shope, Ext. 2285, and the schedule will be rearranged to the best possible interest of all concerned. The schedule will be revised as the work progresses, and notice of changes will be published in the Daily Bulletin.
[A schedule of buildings, identifying each by number, and showing the date work would commence on each was subjoined.]
The military personnel, in accordance with the instructions issued above, assisted plaintiff’s workmen in the moving of the furniture and furnishings as the work progressed.
8. Subsequent to receiving the contract, plaintiff’s president visited the barracks for the purpose of arranging a work schedule, and he found that of the 44 barracks buildings, 13 were partitioned with a long corridor in the center, giving off to small partitioned administrative offices furnished with desks and typewriters, none of which were shown on Floor Plan No. 700-1165 of May 20, 1940. These offices were occupied by military administrative personnel Mondays through Fridays, but not on Saturdays and Sundays. All the other 31 barracks buildings were occupied by troops, 18 *23 of them by soldier prisoners. All contained cots and footlockers. Each building had a recreation room with a pool table, ping-pong table and a barber chair.
9. Plaintiff protested to defendant’s resident engineer about the fact that 13 of the barracks buildings were cut up into small cubicles; that the furniture was not being moved by Government personnel, and that it was proposed to have the barracks occupied while the floors were being installed, none of which conditions appeared in the specifications.
The resident engineer responded by saying that this information concerning the conditions and the work requirements was all available to plaintiff, if plaintiff had visited the site before submitting its bid.
10. Plaintiff’s president did not deem it necessary to visit the site before submitting a bid for his stated reason that the plan of a barracks building showed only completely blank floor spaces, and the specifications were silent as to the moving of furniture and occupancy of the barracks.
Plaintiff stated that it had done like work on some 200 barracks similar to those involved in this contract, and insisted that in work of this kind it is the custom of the Government to specify on its invitations for bids, if it is a fact, that the buildings are occupied and that furniture must be moved by the contractor, if that is intended, and that the work must be carried on during such occupancy.
Plaintiff has produced no affirmative proof in support of either of these statements.
11. Eeceipt of the notice to proceed dated April 15,1955, was acknowledged by plaintiff on April 18, 1955, on which date plaintiff started work under the foremanship of a brother of plaintiff’s president, who served in the capacity of field superintendent.
By its terms, the contract provided that the work should be completed within 150 days. The initial work schedule, referred to above, arranged between defendant’s construction engineer and plaintiff, called for work to begin on one building each day over a period of 44 days. Plaintiff, however, had its men working in more than one barracks building and in as many as 4 buildings at a time. Performance of the contract actually was completed within 73 calendar days, i. e. during the period from April 18 to July 31, 1955.
*24 12. On May 10, 1955, plaintiff wrote to the contracting officer as follows:
This office has been notified by our field superintendent on the above captioned project, that work is being performed by beyond the requirements of plans and specifications such as: moving furniture and installing tile in areas with many partitions which is conflicting with drawing #700-1165.
We shall proceed with this work as you direct and a claim for additional monies will be submitted by us at a later date.
The contracting officer responded to the above letter on May 24, 1955:
Reference is made to letter of your office dated 10 May 1955 with reference to work being performed on Contract DA 36-230-AII-594, O. I. 1950. This Contract calls for performance of “everything that may be necessary to carry out the work specified within the intent and scope of the specifications and drawings.”
The Post Engineer, this Depot, who has been designated to decide all questions which may arise as to the interpretation of the specifications and of drawings used and as to the fulfillment of this contract on the part of the contractor, has advised that the work being done on this contract is within the scope of the specifications and drawings.
13. Under date of June 6, 1955, plaintiff again wrote to the contracting officer, noting its disagreement with the interpretation of the plans and specifications as set forth in the contracting officer’s letter of May 24, and reiterating its position concerning the partitioned rooms and the moving of furniture, and stated that “None of these conditions were noted in plans and specifications, or required under any section of our contract.” The concluding paragraph of this letter reads as follows:
In view of the above-mentioned facts let this letter serve as a formal claim as per article #6 — Disputes, in the sum of $6,538.00 for work performed above and beyond our contractual requirements.
Plaintiff’s letter did not disclose the details of the amount claimed, nor the method by which it was determined.
*25 Subsequent to receipt of the claim, the contracting officer made foldings of fact and a decision rejecting plaintiff’s claim on the ground that all the work performed was required by the contract and specifications.
14. Plaintiff’s appeal from the contracting officer’s decision was heard by the Armed Services Board of Contract Appeals in Washington, D. C., on November 9, 1955, and, following the hearing, counsel for each of the parties filed with the Board briefs on the law and the evidence;
15. On February 3, 1956, the Armed Services Board of Contract Appeals rendered its decision as follows:
The appellant complains that it had to use more labor and materials on the job than expected because of extra partitions in 13 buildings, which were not shown on.the drawing, and because of troop occupancy involving cots and footlockers in 31 buildings, which were shown on the drawing.
The appellant prepared its bid solely in reliance upon the advertised specifications and the drawing attached thereto. The drawing was an old one and did not reflect the actual partitioning of 13 of the buildings, which had been added at some later period. However, the drawing did indicate the presence of cots and footlockers.
Having elected to rely upon the terms of the specifications and the drawing, without further inquiry or inspection of the site, the appellant cannot now be heard to to complain that the cots and footlockers were placed as indicated in the drawing. Accordingly, we find that no additional work was required in this phase of the contract.
However, it is conceded by the Government that the drawing did not indicate the presence of the additional partitions in 13 buildings and that additional work and materials were involved. The appellant was told to proceed and to present a claim, if it had one. No serious question has been raised with respect to the alleged additional cost for this phase of the work in the amount of $2,600. Accordingly, we find that an equitable adjustment may properly be made in this amount by the contracting officer, by a change order under the “Changes” article of the contract, for the additional work and materials requested and employed.
To the extent indicated, the appeal is sustained.
*26 Following that decision a change order was issued April 18, 1956, increasing the original contract price by $2,600. This amount was paid to plaintiff by check dated July 10, 1956.
16. During performance and upon completion of the contract, defendant paid plaintiff, in two installments, the full contract price of $40,180.80, less $1,115.47, representing an adjustment agreed to by the parties because of a shortage in the footage of flooring, originally stated to have been 176,000 square feet. Accordingly, the net amount paid plaintiff was $39,065.33.
Plaintiff’s suit in this court for the claimed amount of $6,538, was filed subsequent to the issuance of the above decision, but before receipt by plaintiff of the $2,600 payment awarded to it under the decision of the Armed Services Board of Contract Appeals. Plaintiff’s present claim, therefore, is for the difference between $6,538 and $2,600, or $3,938, which amount plaintiff allocates as follows:
Additional cost on account of moving furniture and cots_$1,034.00
Additional costs on account of working in occupied premises_ 2,904.00
$3, 938.00
Under date of June 30,1956, plaintiff had sent to defendant its statement of account under the contract as follows:
Invoice No. 15189
Purchasing & Contracting Officer
New Cumberland General Depot
New Cumberland, Penna.
Be: Contract No. 01-1950
DA-36-A11-594
New Cumberland Depot
New Cumberland, Pa.
Contract Price_$40,180.80
Extra as per decision of Board of Appeals in ASBCA No. 2927_ 2,600.00
- 42,780. 80
Less payment 5/31/55_ 20, 084.70
Less payment 8/1/55_____ 18,980. 63
-— 39,065.33
$3,715.47
*27 17. The amounts claimed by plaintiff (finding 16) are not based on a separate and detailed record of excess costs. They represent plaintiff’s estimate of the difference in cost to plaintiff of performing the operations in a clear, open space from one end of a building to the other, and of performing the same operations where furniture had to be moved from one-half of the floor in order to put down the adhesive, then wait for it to dry, before placing the under-layment, and repeat the process for the other half of the floor. No comparative costs for performance of the work under these separate conditions are in evidence. The claimed additional costs shown in the preceding finding are based on an estimated differential in cost, for the two conditions outlined above, of $23.50 and $66.00 per building, respectively.
Plaintiff does not allege, and the evidence does not show that costs of performance of the contract exceeded the contract price, the amount of which, after a minor adjustment, was paid to plaintiff in full, or that performance of the contract work was delayed beyond the period of days allowed under the contract.
18. On July 10, 1956, defendant restated plaintiff’s account under the contract on a voucher, Standard Form No. 1034a, which was sent to plaintiff, and which has not been rejected by plaintiff. The restatement was as follows:

*28 At the same time defendant sent plaintiff to its order, a check drawn on the Treasurer of the United States for $2,600, dated July 10,1956, which was received, deposited, and credited to plaintiff’s account in its Boston bank. The check was signed by the same Army finance officer who restated the account.
19. The presence of furniture in the barracks buildings and the occupancy of these buildings by military personnel were a normal situation in an Army General Depot which had been in use for 15 years.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Utah, Nevada & California Stage Co. v. U.S., 39 C. Cls. 420; cert. denied 199 U.S. 414; Ruff v. U.S., 96 C. Cls. 148; R. C. Huffman Construction Co. v. U.S., 100 C. Cls. 80; Central Engineering and Construction Co. v. U.S., 103 C. Cls. 440; Albert & Harrison, Inc v. U.S. 107 C. Cls. 292; cert. denied 331 U.S. 810; Walsh Bros. v. U.S., 107 C. Cls. 627; Peter Kiewit Sons’ Co. v. U.S., 109 C. Cls. 390.

 Hurvey Radio Laboratories, Inc. v. U.S., 126 C. Cls. 383; Ultermehle v. Norment, 197 U.S. 40, 56 (1905); Hunt v. Rousmaniere’s Adm., 1 Pet. 1, 15; Bank of the United States v. Daniel, 12 Pet. 32, 55; U.S. v. Hodson, 10 Wall. 379, 409; Lamborn v. County Commissioners, 97 U.S. 181, 185; Snell v. Insurance Co., 98 U.S. 85, 90, 92; Allen v. Galloway, 30 Fed. Rep. 466.

 R. H. Stearns Co. v. U. S., 291 U. S. 54, 65 (1933); Holmes v. U. S., 79 C. Cls. 263 (1934).