INTERNATIONAL PAPER CO. v. BURRILL.

(District Court, D. Massachusetts. September 19, 1919.)

No. 1060.

1. TAXATION ⊂⇒541—TAX PAID UNDER DRASTIC STATUTE PAID UNDER IMPLIED DURESS.

A tax imposed by statute containing drastic penalties, for nonpayment and paid under protest, is paid under implied duress.

2. TAXATION ⊂⇒542, 543(4)—RIGHT OF ACTION LIES AGAINST COLLECTOR TO RECOVER TAXES PAID UNDER DURESS.

Unless and except as modified by statute, the common-law right of action for money had and received lies against a tax collector to recover taxes illegally collected and paid under protest, and it is no defense that defendant has paid such taxes into the state treasury.

3. COURTS ⊂⇒363—NONRESIDENTS CANNOT BE DEPRIVED BY STATUTE OF RIGHT TO RECOVER TAXES PAID UNDER DURESS.

Citizens of other states cannot be deprived by a statute of a state of their right through the federal courts to enforce their common-law remedy for recovery of taxes illegally exacted by the state.

At Law. Action by the International Paper Company against Charles L. Burrill. Judgment for plaintiff.

Charles A. Snow, Frank T. Benner, and William P. Evearts, all of Boston, Mass., for plaintiff.

Henry C. Attwill, Atty. Gen., and William Harold Hitchcock, Asst. Atty. Gen., of Massachusetts, for defendant.

ANDERSON, Circuit Judge. This is an action for money had and received, brought by the plaintiff, a foreign corporation, against the defendant, who was and is treasurer of the commonwealth of Massachusetts, to recover taxes paid by the plaintiff to the defendant on May 22, 1916, under the provisions of statutes held by the Supreme Court of the United States in International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, unconstitutional. This tax was paid under protest and under alleged implied duress.

[1] Under the Massachusetts act (St. 1909, c. 490, pt. 3, § 70) a petition was brought by the plaintiff in the Supreme Judicial Court of Suffolk county against the commonwealth of Massachusetts to recover this tax. This petition was on the plaintiff's motion dismissed without prejudice in January, 1919, because, under the holding of the Supreme Judicial Court of Massachusetts in International Paper Co. v. Commonwealth, 232 Mass. 7, 121 N. E. 510, the failure to make service within six months after payment, required by said section 70, was fatal to the maintenance of said petition. The plaintiff, therefore, now has no legal remedy against the commonwealth of Massachusetts to recover such tax. The present question is whether this action can be maintained against the defendant personally to recover money paid in response to demands now admittedly illegal. Stat. 1909, c. 490, pt. 3, §§ 56, 58, and 59, provides drastic penalties for the nonpayment of

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such taxes. Clearly, under these statutes, upon the agreed facts, a finding of implied duress is warranted, and, I think, required. See Atchison, etc., Railway Co. v. O'Connor, 223 U. S. 280, 286, 32 Sup. Ct. 216, 217 (56 L. Ed. 436, Ann. Cas. 1913C, 1050) where Mr. Justice Holmes says as to such payments that "courts sometimes, perhaps, have been a little too slow to recognize the implied duress under which payment is made."

The plaintiff's counsel contends that in cases of payment under implied duress protest is not required. It is unnecessary to rule on this point, for it appears that this tax was paid under protest. The defendant, then, obtained money from the plaintiff without legal right, of which the defendant was duly notified, and under implied duress. Although the defendant acted entirely in good faith and under the color of office, the statutes under which he obtained the plaintiff's money are absolutely void. In law, his acts were wrongful.

"A void act is neither a law nor a command. It is a nullity. It confers no authority. It affords no protection. Whoever seeks to enforce unconstitutional statutes, or to justify under them, or to obtain immunity through them, fails in his defense and in his claim of exemption from suit." Mr. Justice Lamar, in Hopkins v. Clemson College, 221 U. S. 636, 644, 31 Sup. Ct. 654, 657 (55 L. Ed. 890, 35 L. R. A. [N. S.] 243).

[2] The defense mainly relied on is that the defendant did not personally receive and retain the plaintiff's money, but turned the same over, as in duty bound under the statutes of the commonwealth of Massachusetts, into the treasury of the commonwealth. But the fact that the check in question may not have been handled by the defendant, or even known to him, is, in my view, immaterial. It was handled by his agent, and he was bound to know that the plaintiff was paying to him under protest money that it claimed he was not entitled to receive. He therefore received it and caused it to be deposited in the treasury of the commonwealth at his peril.

"If any person gets money into his hands illegally, he cannot discharge himself by paying it over to another." Lord Ellenborough, in Townson v. Wilson, 1 Camp. 396.

Neither he nor the commonwealth had any right to receive or retain this money. It was paid to him by the plaintiff under duress and in terror of penalties provided in the statute, supra.

A leading case dealing with the principles here involved is that of Elliott v. Swartwout, 10 Pet. 137, 9 L. Ed. 373.

This was an action for money had and received against the collector of the port of New York to recover certain duties found to have been illegally exacted by the collector from an importer. As to a part of the duties sought to be recovered, the collector had "received the money in the ordinary and regular course of his duty, * * * paid it over into the treasury, and no objection made at the time of payment, or at any time before the money was paid over to the United States." The court held that this must "be considered as a voluntary payment, by mutual mistake of law; and, in such case, no action would lie to recover back the money."

As to another part of the tax collected, the payer having at the time of payment given notice to the collector that the duties charged were too high, that he paid to get possession of his goods and intended to sue him to recover back amount erroneously paid, the court held this not to be a voluntary payment, but that an action for money had and received would lie against the collector, citing among other authorities Irving v. Wilson, 4 T. R. 485; Greenway v. Hurd, 4 T. R. 553; Sadler v. Evans, 4 Bur. 1984; Snowdon v. Davis, 1 Taunt. 358; Clinton v. Strong, 9 Johns. 369; Hearsey v. Pruyn, 7 Johns. (N. Y.) 179; Frye v. Lockwood, 4 Cow. (N. Y.) 454. The protest in the present case was, in my view, enough; it was not necessary for the plaintiff therein to threaten the defendant with a personal suit, in order to prevent the payment from being a voluntary one, assuming for the moment that protest is, in cases of implied duress, necessary.

A similar question came before the Supreme Court in Cary v. Curtis, 3 How. 236, 11 L. Ed. 576. This also was an action against the collector of the port of New York to recover duties found to have been illegally collected. The majority of the court held, by Mr. Justice Daniel, that the Act of March 3, 1839, c. 82, 5 Stat. 339, requiring the collector of customs to place money collected to the credit of the treasury of the United States and authorizing application by the aggrieved taxpayer to the Secretary of the Treasury, cut off the common-law right of action for money had and received against collectors of customs. From this construction of the statute Justices Story and McLean dissented, contending that the majority had misconstrued the act; also that, construed as the majority did construe it, it was unconstitutional. Apart from the statute, all the Justices were of the opinion that action for money had and received would clearly lie against the collector. That the minority of the court construed the act as Congress intended it to be construed appears from the facts stated by Mr. Justice Matthews in Arnson v. Murphy, Collector, 109 U. S. 238, 240, 3 Sup. Ct. 184, 186 (27 L. Ed. 920). It is there pointed out that after the Supreme Court held in Cary v. Curtis that the legal effect of the act of March 3, 1839, "was to take from the claimant all right of action against the collector, by removing the ground on which the implied promise rested. Congress, being in session at the time that decision was announced, passed the explanatory act of February 26, 1845, which, by legislative construction of the act of 1839, restored to the claimant his right of action against the collector, but required the protest to be made in writing at the time of payment of the duties alleged to have been illegally exacted, and took from the Secretary of the Treasury the authority to refund conferred by the act of 1839. * * *" It certainly is significant that Congress restored a right of action against federal officials acting ultra vires.

These authorities make it clear that, unless and except as modified by statute, the common-law right of action for money had and received lies against a tax collector to recover taxes illegally collected, with notice that they are not paid voluntarily, but under protest; duress, express or implied, may make protest unnecessary, as already noted.

Compare Lincoln v. Worcester, 8 Cush. (Mass.) 55, 61.

In Erskine v. Van Arsdale, 15 Wall. 75, 77 (21 L. Ed. 63), the court says:

"Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal and that suit will be instituted to compel the refunding of them."

De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, was also an action against the collector of the port of New York to recover duties alleged to have been illegally exacted and paid on certain importations of sugar from Porto Rico after cession to the United States. On page 177 et seq. of 182 U. S., 21 Sup. Ct. 743, 45 L. Ed. 1041, the court deals with the question whether the legality of the duties can be tested in this form of action and answered in the affirmative.

See, also, Pacific Whaling Co. v. United States, 187 U. S. 447, 453, 23 Sup. Ct. 154, 47 L. Ed. 253; State Railroad Tax Cases, 92 U. S. 575, 613, 23 L. Ed. 663; Atchison, etc., Railway Co. v. O'Connor, 223 U. S. 280, 287, 32 Sup. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 32 Sup. Ct. 236, 56 L. Ed. 510; Meek v. McClure, 49 Cal. 623; Van Buren v. Downing, 41 Wis. 122.

In Lamborn v. County Commissioners, 97 U. S. 181, 185, 186 (24 L. Ed. 926), it is said:

"Under this rule, illegal taxes or other public exactions, paid to prevent such seizure or remove such detention, may be recovered back, unless prohibited by some statutory regulation to the contrary."

[3] But in dealing with the rights of a citizen of another state, the "statutory regulation" which will bar his right cannot, in my view, be the enactment of the commonwealth of Massachusetts. Citizens of other states cannot be deprived by enactments of the commonwealth of Massachusetts of their right through the federal courts to enforce common-law remedies.

See Cunningham v. Macon, etc., R. R. Co., 109 U. S. 446, 452, 3 Sup. Ct. 292, 296 (27 L. Ed. 992), where the court said:

"Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defense is that he has acted under the orders of the government.

"In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him. See Mitchell v. Harmony, 13 How. 115 [14 L. Ed. 75]; Bates v. Clark, 95 U. S. 204 [24 L. Ed. 471]; Meigs v. McClung, 9 Cranch, 11 [3 L. Ed. 639]; Wilcox v. Jackson, 13 Pet. 498 [10 L. Ed. 264]; Brown v. Huger, 21 How. 305 [16 L. Ed. 125]; Grisar v. McDowell, 6 Wall. 363 [18 L. Ed. 863]."

In Massachusetts, actions to recover illegal taxes have commonly been brought directly against the cities and towns receiving them, because such municipal corporations may be sued on common-law principles; whereas the commonwealth may be sued only with its expressed consent. Compare Lincoln v. Worcester, 8 Cush. (Mass.) 55, where

Chief Justice Shaw in 1851 reviewed many of the earlier cases; also Preston v. Boston, 12 Pick. 7; Stetson v. Kempton, 13 Mass. 272, 7 Am. Dec. 145; Harrington v. Glidden, 179 Mass. 486, 491, 61 N. E. 54, 94 Am. St. Rep. 613.

In Harrington v. Glidden, supra, 179 Mass. at page 492, 61 N. E. 55, 94 Am. St. Rep. 613, Hammond, J., after reviewing many of the cases and the claim that the statutory remedy was exclusive, says:

"These and similar cases all proceed upon the principle that an assessment made by assessors who have no jurisdiction is not the assessment authorized by statute. It is no assessment at all and is absolutely void. As it is not the statutory proceeding, the statutory remedy is not exclusive. Such an assessment, therefore, can be attacked collaterally in an action of tort against the assessors, where such an action will lie, or in an action against the town to recover back the money paid, or in defence to an action by the collector. These general remedies are not for those who are aggrieved by assessors acting within their jurisdiction, but are allowable to redress wrongs inflicted by persons who pretend to be assessors, but who are not such, because acting without jurisdiction."

Compare Judson, Taxation (2d Ed.) §§ 650, 651.

Clearly if, after the Supreme Court had held the Massachusetts statutes unconstitutional, the defendant and other state officials had sought to collect the tax in question, application to this court for an injunction would have had to be sustained. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Benedicto v. Porto Rican American Tobacco Co., 256 Fed. 422, —— C. C. A. ——, decided in this circuit on March 19, 1919.

These decisions all go upon the theory that the attempts of such officials to collect money or impose penalties under void statutes are wrongful and may do irreparable injury to the plaintiff. The injunctions run against the officials, and not against the state, which is expected to be the ultimate beneficiary of the taxes wrongfully exacted. If such acts of such officials may be enjoined as personal wrongdoing, it is clear that, after performance, the wrongdoers may be held personally liable to persons wronged.

Unless this action can be maintained, the plaintiff is apparently remediless in the courts. In his brief for the defendant, learned counsel says:

"When money has once been paid to the treasurer of the commonwealth, as in the case at bar, it is too late to institute proceedings as provided by the statute for its recovery. The Legislature alone has the power to determine whether just and fair dealing requires its repayment."

This amounts to saying that the commonwealth of Massachusetts may, by equipping various officials with apparent power under unconstitutional statutes, obtain from foreign corporations, and retain in its treasury, large sums of money, unless the Legislature shall mercifully otherwise decide.

Clearly the remedy provided under section 70 of St. 1909, c. 490, pt. 3, may be changed at any time. Foreign corporations are, under that section, now limited to the short period of six months to bring their action in the state court. That period might, by the Legislature of Massachusetts, be made even shorter, or the remedy abolished entirely.

No federal court can hold that the rights of foreign corporations or of other citizens of other states to recover money illegally obtained from them, through the implied duress of statutes held unconstitutional by the Supreme Court of the United States, shall lie at the mercy of the Legislature of Massachusetts or of any other state.

If, as the defendant's counsel claims, the only way to get the money out of the treasury of the commonwealth is through an act of the Legislature of Massachusetts, it is the defendant, who is legally in the wrong, and not the plaintiff, who should be remitted to that remedy. The plaintiff is entitled to a remedy in the courts of the nation.

As the money was wrongfully obtained by the defendant through implied duress, and as it is no defense that the defendant has paid the money into the treasury of the commonwealth, there must be judgment for the plaintiff for the amount of the tax, with interest thereon from the date of payment, May 22, 1916.

Judgment accordingly.