ALONSO RIERA & CO. ET AL., PLAINTIFFS AND APPELLANTS, *v.* BENEDICTO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 2, in an Action for Refund of Taxes.

No. 2447.—Decided June 20, 1923.

TAXES—REFUND OF TAXES—PAYMENT UNDER PROTEST—ACTION AGAINST TREAS-
URER.—The Act of March 9, 1911, is a bar to any action whatsoever against the Treasurer of Porto Rico for the recovery of taxes illegally collected by him, unless the taxes were paid under protest and the action was brought within thirty days thereafter.

ID.—ID.—ID.—ID.—CONSTITUTIONAL LAW—PUBLIC POLICY.—The Legislature has the power to place the responsibility where it belongs in all cases involving the recovery of taxes exacted under color of an unconstitutional statute, to prescribe an adequate remedy and to make it exclusive to the extent of pro-tecting a public officer who, acting upon the presumption that such a law is a valid enactment, attempts to enforce it; and the Legislature, as a mat-ter of public policy, has deliberately brought about this result in the said Act of 1911.

The facts are stated in the opinion.

*Messrs. R. Martínez Alvarez* and *J. J. Ortiz Alibran* for the appellants.

*The Attorney General* and *Mr. A. Arroyo Rivera* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This suit in name, style and form is brought against José E. Benedicto, Treasurer of Porto Rico, and is charac-terized both in the title and in the body of the complaint as an action demanding the return of money paid for the purchase of guarantee stamps.

Plaintiffs, a large number of cigar manufacturers and

exporters of tobacco, as their cause of action against the said defendant, allege in substance that he is of age, a resident of San Juan and, as Treasurer of Porto Rico, is in charge of the collection of all taxes imposed by law in favor of The People of Porto Rico; that the Legislature of Porto Rico in December, 1917, enacted a law entitled "An Act to amend an Act entitled 'An Act to protect Porto Rican cigars from fraudulent misrepresentation, by providing for adequate expert inspection, and the issue of stamps of guarantee covering the origin of tobacco used in the manufacture of such cigars, intended for exportation, and for other purposes,' approved March 11, 1915;" that this law authorizes the Treasurer of Porto Rico to furnish to the manufacturers of cigars, or exporters of leaf tobacco, stamps, to be known as guarantee stamps for cigars intended for exportation or consumption in Porto Rico and for leaf tobacco for exportation, such stamps to be necessarily affixed to each original box or package, regardless of its capacity, so as to be visible to the consumer, before removal from the place of manufacture or place of preparation for exportation; that in section 3 it is provided that the denomination of each guarantee stamp for original boxes or packages containing cigars for export or consumption in Porto Rico shall be one cent each, and twenty-five cents each for packages containing leaf tobacco, scraps or stripped tobacco for export; that the said law was put into effect and operation by the Treasurer of Porto Rico in or about the month of March, 1918, and continued in force until September, 1919, during which period the Treasurer of Porto Rico, the defendant herein, was exacting in accordance with the said law from all manufacturers of cigars and exporters of leaf tobacco, scraps or stripped tobacco for export or consumption in Porto Rico the affixing of guarantee stamps of one cent

upon each package or box of cigars made in Porto Rico and of twenty-five cents upon each container of leaf tobacco, scraps or stripped tobacco for export before removal from the place of manufacture or preparation for export or consumption in Porto Rico; that during the period that elapsed between March, 1918, and September, 1919, some of the plaintiffs were manufacturers of cigars and others exporters of leaf tobacco in Porto Rico from whom the Treasurer of Porto Rico, defendant herein, demanded the affixing of stamps as aforesaid whereby plaintiffs were obliged to purchase from The People of Porto Rico guarantee stamps which were affixed to each package of cigars and container of leaf tobacco before removal from the place wherein the same were manufactured and prepared by plaintiffs; that on July 13, 1920, plaintiffs addressed a letter to the Treasurer of Porto Rico, now defendant, setting forth, among other things, that the sums of money listed in the complaint and paid for the purchase of guarantee stamps were unduly paid and were unjustly and illegally exacted and collected by the Treasurer of Porto Rico, defendant herein, for the reason that such collection was made by virtue of an unconstitutional law which had been declared void by the judgment of the Circuit Court of Appeals of the United States rendered on March 19, 1919, in the case of the *American Tobacco Company* v. *The Treasurer of Porto Rico*, defendant herein, and demanding of the said Treasurer of Porto Rico that he should return to plaintiffs the said amounts "as a just, equitable and legal measure upon the part of The People of Porto Rico, who ought not to sanction the exaction of property from the taxpayers without due process of law," to which demand the Treasurer replied that the money so collected had been covered into the general fund of the Treasury and that the Treasurer of Porto Rico was not authorized to comply with such request; that plaintiffs on October 29, 1920, asked in

writing for a reconsideration of this ruling, to which request the Treasurer replied on November 26, 1920, adhering to the opinion already expressed; that if plaintiffs had refused or failed to affix the guarantee stamps as aforesaid, in accordance with the law and the order of the Treasurer of Porto Rico, the latter would have attached and confiscated the packages in question, in addition to the institution of criminal proceedings; that since September, 1919, the Treasurer of Porto Rico, defendant herein, has not required of plaintiffs the affixing of stamps for exportation or consumption in Porto Rico; that the law of December 3, 1917, above mentioned, by virtue whereof the Treasurer of Porto Rico demanded of plaintiffs the affixing of stamps and plaintiffs were obliged to purchase the same as aforesaid, was declared void by the judgment of March 19, 1919, above mentioned; that the said law, having been declared unconstitutional, had no legal existence either at the time of its enactment, or thereafter, for which reason the tax in question was unjustly paid by plaintiffs and unduly exacted and collected by the Treasurer of Porto Rico as aforesaid and that plaintiffs "by reason of the foregoing averments have a perfect right to recover from the People the sum so paid."

The prayer is for a judgment "condemning the defendant, José E. Benedicto, Treasurer of Porto Rico, to reimburse each of the plaintiffs in the amount paid for guarantee stamps as set forth and listed in detail in the complaint, together with such further pronouncements as may be proper."

A demurrer was filed upon the ground, among others, that the court was without jurisdiction because the action instituted is in reality an action against The People of Porto Rico, who have not consented to be sued in the present case. The court below took this view of the matter and, without passing upon the other grounds of demurrer, dismissed the action for want of jurisdiction.

From the opinion of the trial judge we quote the following:

"Council for plaintiffs say in their carefully prepared brief that this action is brought under section 1796 of the Civil Code in force; that it is an action to recover money unduly collected by the Treasury Department or paid to its agents; that it is the common law action of indebitatus assumpsit that may be brought against an official who has collected the tax unlawfully assessed, and that the present action is brought against the Treasurer and not against The People of Porto Rico for the reason that the said official has in his possession the amount of the guarantee stamps which the plaintiffs allege to have purchased. But in the complaint there is no positive allegation that the sums in question are still in the possession of the official who collected them. On the contrary, in the sixth paragraph thereof it is alleged that the Treasurer, in refusing to refund the amount paid for the stamps, gave as the reason for his refusal that the money so collected had been included in the funds of the Treasury, that is, out of the transitory and momentary possession of the collecting official and in the possession of The People of Porto Rico though in the custody of the Treasurer, who is without power to reimburse it as well as to pay out any money without the corresponding express authority of law. And inasmuch as the plaintiffs in their brief admit the general principle that when an action is brought against a public officer and its object is to deprive The People of Porto Rico of its own funds or of the people's property in its possession, such action is in point of fact one against The People, and there is in the complaint no allegation to controvert the statement of the Treasurer in making his refusal, which amounts to saying that the money sought to be recovered is in the possession of The People of Porto Rico and not in that of the collecting official; and furthermore, it being alleged in the 9th paragraph of the complaint that by reason of the facts therein contained the plaintiffs are entitled to recover from The People of Porto Rico the amounts paid, which implies the statement that The People has appropriated or acquired the possession of the said funds, it is necessary to conclude that the action is in point of fact one against The People of Porto Rico and not against the Treasurer of Porto Rico."

"It is sought to recover from The People of Porto Rico sums paid as revenue, taxes or duties unlawfully collected. And this

being so, we think that the present case comes within the provisions of the Act of 1911, amended in 1920. And as the complaint does not show that the payments were made under protest, it is necessary to conclude, as we do, that this action is not authorized by the said Acts. The question now is whether it has been so authorized by the Act of 1916. At the hearing on the demurrers counsel for the plaintiffs maintained the affirmative view. In the written brief they do not insist on this theory, but adopt the one that the action is one of indebitatus assumpsit. Subdivision B of section 1 of Act No. 76 of 1916 authorizes an action against The People of Porto Rico to revendicate personal or real property. Money is personal property, but an action to recover money is not one in revendication. The latter demands, among other indispensable requisites, the previous identification of the thing to be revendicated. The gist of it is the vindication, the reestablishment of a disturbed legal status with regard to specific, not generic, property. Money is and can not be the subject of an action of that class unless it is marked in some manner or specified sufficiently in proportion to the power of identification. (14 Cal. 410; 29 Cal. 619; 63 Cal. 24.) The present action, therefore, is not authorized by the provisions of either the Act of 1911, or the Act of 1916, or the Act of 1920, or by any other Act. The court can not pass upon the case because The People of Porto Rico has not given its consent to be sued. The first ground of demurrer being thus adjudicated upon, it seems unnecessary to go into or decide the remaining questions.''

For the purposes of this opinion it may be conceded, without holding, that the court below erred in the conclusion so reached. As bearing upon this point, however, and as suggestive of some other interesting questions, including that of the effect of a common mistake or misunder-standing in regard to the validity of the law of 1917, in the absence of protest, we may refer, in passing, to *Poindexter v. Greenhough,* 114 U. S. 270 (cited and relied upon by appellants) ; *Union Central L. Ins. Co. v. Gromer,* 19 P. R. R. 856, and cases cited therein (upon which counsel for appellee are content to stand as establishing the proposition that ''a suit for the recovery of taxes illegally exacted although in

form against the Treasurer, is an action against The People of .Porto Rico"); 26 R. C. L. 473, sec. 426; *Atchison etc. Railway Co.* v. *O'Connor,* 223 U. S. 280; *International Paper Co.* v. *Burril,* 260 Fed. 664; note to *Louisville & N. R. Co.* v. *Burr,* 44 L. R. A. (N. S.) 189, 193; *Louisiana* v. *Jumel,* 107 U. S. 711; *Elliott* v. *Swartout,* 10 Peters, 137; *Dowell* v. *Mix,* 116 Fed. 664, and note to *Messer-Moore Insurance etc. Co.* v. *Trotwood Park Land Co.,* Ann. Cases 1912 D, 712.

But, aside from any of these matters, we are persuaded that the law of 1911 is a bar to any action whatsoever against the Treasurer of Porto Rico for the recovery of taxes illegally collected . by him, unless paid under protest and brought within thirty days thereafter.

Sections 1 to 5 of that law are set forth in full in *Ensenada Estates* v. *Hill,* 24 P. R. R. 462. Section 1 includes all cases wherein, under color of official authority, revenue is alleged or claimed to be due and steps are taken to collect the same. The Treasurer is required by the terms of section 2 to pay into the Treasury all sums received, notwithstanding the fact that the same have been paid to him under protest. Then, as provided in section 3, the party making such involuntary payment, within thirty days thereafter, may "sue the said Treasurer for said sum, for the recovery thereof;" and upon the issuance of a proper judicial certificate the Treasurer is authorized to refund the money "in preference to other claims on the Treasury." Section 4 says that "there · shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally." And section 5 provides that "in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided and none other."

In the face of these plain provisions we are not dis-

posed to impute to the Legislature any intention that the Treasurer should be left under any personal liability for money so covered into the Treasury by him pursuant to the express mandate of the law,—that he should be called upon to satisfy out of his private funds such judgments as might be rendered against him in personal actions brought long after the statutory remedy had been lost, with no other compensation for this hardship than the privilege of awaiting the convenience of some future legislative assembly to make such reparation as it might deem proper. And if there be no personal liability for moneys illegally exacted and paid under protest, then, *a fortiori,* there can be none for sums received in good faith and without notice of any claim or objection of any sort or kind whatsoever.

That the Legislature has the power to place the responsibility where it belongs, in all cases involving the recovery of taxes exacted under color of an unconstitutional statute, prescribe an adequate remedy and make the same exclusive to the extent of protecting a public officer who, acting upon the presumption that such a law is a valid enactment, attempts to enforce it, is no longer open to question. And that the Insular Legislature, as a matter of public policy, has deliberately brought about this result in the law of 1911 is, we think, equally clear. See *Snyder* v. *Marks,* 109 U. S. 189; *Sheldon* v. *Platt,* 139 U. S. 591, 597, and *Burrill* v. *Locomobile Co.,* 258 U. S. 34.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf and Aldrey concurred.

Mr. Justice Franco Soto took no part in the decision of this case.