## Grant v. City of Philadelphia

*Ernest Scott*, of *Pepper, Bodine, Stokes & Schoch*, for plaintiff.

*Thomas B. K. Ringe*, assistant city solicitor, for defendant.

GLASS, J., June 24, 1932.—This is an action for money had and received brought by the plaintiff, William S. Grant, Jr., against the defendant, the City of Philadelphia, to recover license fees paid by the plaintiff to the defendant, pursuant to an ordinance of council of the City of Philadelphia, under duress and protest.

The plaintiff at the time of bringing suit was and had been for a period of more than twenty years the owner in fee simple of premises No. 2202 St. James Place, in the City and County of Philadelphia. As part of the said premises he had maintained for more than twenty years, and at the time of suit still maintained, two coal vaults which extend under the sidewalk in front of the said property. On December 16, 1931, the Mayor of the City of Philadelphia approved an ordinance which had been duly passed by the city council, entitled "An ordinance to provide for the inspection, licensing and regulation of certain structures on, over or under any public street or highway; imposing the duty of such inspection upon the Bureau of Highways in the Department of Public Works; fixing license fees, and providing penalties for the violation thereof." The said ordinance provides, in substance, that from and after January 1, 1932, it shall be the duty of the Bureau of Highways of the Department of Public Works to inspect, at least semiannually, bridges, vaults and tunnels which are upon, over or under the public highways in order to make sure that these structures are maintained in a safe condition. The ordinance further provides that all persons maintaining such structures shall pay a license fee therefor of fifty dollars per year for each of said structures, upon the payment of which charges licenses shall be granted for the maintenance of the said structures for the calendar year. Applications for said licenses were to be made for the year 1932 up to. and including February 1, 1932. It further provides that any person or persons maintaining any such structures without first obtaining a license therefor are, after ten days' notice given to them by the Bureau of Highways, to be subject to a penalty.

Nothing in the ordinance is to apply to bridges, vaults and underground tunnels of public service companies. It further provides that the structures required to be licensed are declared to be nuisances if maintained without such licenses, and, after ten days' notice from the Bureau of Highways, may be removed by said bureau without further notice at the expense of the person or persons maintaining the same.

On January 22, 1932, a written notice was served on the plaintiff directing him to apply for a license for the two vaults maintained in connection with the premises aforesaid. On the last day of January, 1932, which was the expiration of the period during which application could be made, the plaintiff consulted his attorneys, and under their instructions he made an application, under protest, to the Bureau of Highways for a license, and on the same day payment under protest was made for the said license. Both the application for the license and the check given in payment thereof were marked as being paid under protest.

The case was tried by a judge without a jury, and a finding was made for the plaintiff in the sum of $102.13. We have before us the defendant's motion for judgment in its favor n. o. v. At the trial of the case, counsel for the plaintiff and counsel for the defendant entered into a stipulation that the findings of fact in the case of Arronson et al. v. City of Philadelphia et al., 16 D. & C. 427, shall be made a part of the record in this case in so far as they are pertinent thereto.

The motion before us presents two questions for determination: First, the validity or invalidity of the ordinance, and, secondly, the right of the plaintiff to recover the money paid by him to the city, involuntarily and under duress and protest under his contention, and, according to the defendant, paid voluntarily.

In view of the finding for the plaintiff, all the evidence and proper inferences therefrom favorable to the plaintiff must, under the familiar rule, be taken as true, and all unfavorable to him rejected: Hunter v. Pope, 289 Pa. 560, 562; Caldwell v. Continental Trust Co., 291 Pa. 35; Frank v. Reading Co., 297 Pa. 233; Snyder et al. v. Penn Liberty Refining Co., 302 Pa. 320; Finch v. Horn & Hardart Baking Co., 94 Pa. Superior Ct. 599; Lincoln v. Christian, 94 Pa. Superior Ct. 145, 150; Viscount v. Ætna Ins. Co. of Hartford, Conn., 101 Pa. Superior Ct. 361, 364. In Lincoln v. Christian, supra, Cunningham, J., says (page 150): "In support of the verdict, we must assume the truth of plaintiff's evidence and every inference fairly deducible therefrom."

The trial judge could reasonably have found from all the evidence produced that the payment of the license fees was involuntarily made under duress and protest. Frank A. Bedford, Jr., Esq., a member of the bar, testified as a witness for the plaintiff that Grant, the plaintiff, came to his office with the notice to which reference has already been made, seeking advice as to what to do about it, and that after examining the ordinance and believing it to be of doubtful validity because of the heavy penalties provided for therein, he advised him to pay the license fees under protest; that he drew a check payable to the receiver of taxes in the amount of the license fees and marked on the face of said check the words "Paid under protest for vault licenses."

The testimony further disclosed that the cost of the inspection of the vaults covered by the ordinance in question would amount to approximately $39,178, and that the gross annual return would be $190,000; that the charge per vault is fifty dollars, whereas the cost of inspection, licensing and regulation provided for in the ordinance will not exceed ten dollars per vault.

The trial judge could reasonably have found that the fees or charges imposed by the said ordinance are excessive and unreasonable and that the ordinance could not be upheld on the theory that the charge which it imposed is an annual rent. The ordinance cannot be sustained as a valid exercise of power on the part of the municipality. It is a revenue-producing ordinance and not a police measure, and the charge imposed by it, being in reality a tax intended for purposes of revenue, is not sustained by any legislative authority.

The trial judge was justified in reaching the conclusion that the ordinance is invalid and unconstitutional. See the very scholarly discussion by Stern, P. J., as to the validity of the ordinance in the case of Arronson et al. v. City of Philadelphia et al., supra, with which we are in entire accord and which we adopt.

The second question raised is the more important of the two. Counsel for the defendant, in denying the plaintiff's right of recovery, relies upon the cases of Union Ins. Co. v. The City of Allegheny, 101 Pa. 250, and Peebles et ux. v. Pittsburgh, 101 Pa. 304. A careful reading of those cases convinces us that they were decided upon the theory that the money was voluntarily paid. It is conceded that no right of recovery exists in the plaintiff if the payment is made voluntarily. The facts in the instant case present a situation wherein the plaintiff was compelled to make the application to the city and pay the license fees because his failure to do so would have subjected him to a penalty far in excess of and disproportionate to the amount of the license fee itself. By failing to pay the license fee, the plaintiff would have been faced with the possibility of having the structure declared a nuisance and removed at his cost without notice to him.

Counsel for the defendant suggested that the proper remedy for the plaintiff would have been to bring a bill in equity to restrain the collection of the tax. We can dismiss that suggestion with the statement that, had the ordinance been held valid, the fact of the equity suit would have been no defense against the assessment of the penalty and no defense against the previous removal of the plaintiff's property by the defendant as a nuisance. The plaintiff was, therefore, confronted with but one course of action, that is, to pay the fee under protest and bring an action in assumpsit to recover it back. We are inclined to follow the more liberal view taken and adopted by the Supreme Court of the United States in cases analogous to this one. We take the view that in the instant case there was that coercion or duress on the part of the city which was of sufficient character as to regard the payment as involuntary, because there was that exercise of the power possessed or believed to be possessed which would have deprived the plaintiff of his property unless he complied with the requirements expressed in the ordinance.

In Atchison, Topeka & Santa Fé Ry. Co. v. O'Connor, 223 U. S. 280, the leading case on the subject, which was an action to recover taxes paid under duress and protest, the plaintiff contending that the law under which the tax was levied was unconstitutional, Mr. Justice Holmes used this language (page 285) :

"It is reasonable that a man who denies the legality of a tax should have a clear and certain remedy. . . ."

At page 286: "If at the same time the citizen is put at a serious disadvantage in the assertion of his legal, in this case of his constitutional, rights, by defense in the suit, justice may require that he should be at liberty to avoid those disadvantages by paying promptly and bringing suit on his side. He is entitled to assert his supposed right on reasonably equal terms. See Ex parte Young, 209 U. S. 123, 146. . . . In other words, we are of opinion that the payment was made under duress." See 26 R. C. L. 457, Sec. 413.

In International Paper Co. *v.* Burrill, 260 F. 664 (1919), the court held that a tax imposed by statute containing drastic penalties for nonpayment and paid under protest is paid under implied duress; the court in that case using this language (page 666):

"These authorities make it clear that, unless and except as modified by statute, the common-law right of action for money had and received lies against a tax collector to recover taxes illegally collected, with notice that they are not paid voluntarily, but under protest; duress, express or implied, may make protest unnecessary."

At page 667: "In Erskine *v.* Van Arsdale, 15 Wall. 75, 77 (21 L. Ed. 63), the court says: 'Taxes illegally assessed and paid may always be recovered back if the collector understands from the payer that the taxes are regarded as illegal and that suit will be instituted to compel the refunding of them.' "

In Lamborn *v.* County Commissioners, 97 U. S. 181, 185, 186 (24 L. Ed. 961), it is said:

"Under this rule illegal taxes or other public exactions, paid to prevent such seizure or remove such detention, may be recovered back, unless prohibited by some statutory regulation to the contrary."

In Robertson *v.* Frank Bros. Co., 132 U. S. 17, it was held that the payment of money to a customs official to avoid an onerous penalty, though the imposition of that penalty may have been illegal, is sufficient to make the payment an involuntary one.

In Ward et al. *v.* Board of County Commissioners of Love County, 253 U. S. 17, 23, the court says:

"The county demanded that the taxes be paid, and by threatening to sell the lands of these claimants and actually selling other lands similarly situated made it appear to the claimants that they must choose between paying the taxes and losing their lands. To prevent a sale and to avoid the imposition of a penalty of eighteen per cent. they yielded to the county's demand and paid the taxes, protesting and objecting at the time that the same were illegal. The moneys thus received were obtained by coercive means—by compulsion. . . . As the payment was not voluntary, but made under compulsion, no statutory authority was essential to enable or require the county to refund the money. It is a well-settled rule that 'money got through imposition' may be recovered back; and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation:' Marsh *v.* Fulton County, 10 Wall. 676, 684; City of Louisiana *v.* Wood, 102 U. S. 294, 298, 299."

As to payment to avoid penalty or forfeiture, in 26 R. C. L. 457, Sec. 413, it is stated:

"When, however, a heavy penalty will continue to go on accruing during all the time that might be spent before the validity of the defense could be adjudged, and the legality of the tax is open to considerable doubt, the taxpayer is not required to run the risk of having his tax doubled if he is finally held liable, and payment to avoid such a risk is considered to be under duress."

It would seem that the doctrine so clearly and plainly asserted in the Federal courts is receiving recognition in our own courts, as is indicated by the language in some of the decisions.

In Phila. & Reading Coal and Iron Co. *v.* Tamaqua Borough School District, 304 Pa. 489, 494, it is said:

"Undoubtedly, the well-established rule in this state is that a voluntary payment of taxes to the public authorities without any duress, threats, or misstate-

ments on the part of the latter, or protest and notice of intention to reclaim on the part of the taxpayer, precludes subsequent recovery of any overpayment: Shenango Furnace Co. v. Fairfield Township, 229 Pa. 357; McCrickart v. Pittsburgh, 88 Pa. 133. If the payment was a voluntary one, it may not be recovered unless a statute so provides."

In one of the earlier cases, Hospital v. Philadelphia County, 24 Pa. 229, Lewis, C. J., says (page 231):

"A voluntary payment of money under a claim of right cannot, in general, be recovered back; but it has been held that when a party is compelled by duress of his person or goods to pay money for which he is not liable, it is not voluntary but compulsory, and he may rescue himself from such duress by payment of the money, and afterwards, on proof of the fact, recover it back: Astley v. Reynolds, 2 Str. 916."

We are, therefore, of the opinion that the trial judge made a proper finding for the plaintiff, predicated upon the invalidity of the ordinance, and the involuntary payment of the license fees, which was made under compulsion, protest and coercion. The defendant's motion for judgment in its favor n. o. v. is, therefore, dismissed.